## CALVO v. DE GUTIERREZ.

APPEAL FROM THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 80.   Argued December 17, 1907.—Decided February 24, 1908.

An agreement made between the owners of a half interest in property in Manilla, who were ultimate heirs of the deceased owner of the other half interest, and the widow of such decedent, who was his usufructuary heiress, provided for the sale of the property at a specified price, and that after certain payments the "remainder" should be paid to the widow, on her giving the usual usufructuary security. *Held*, that the agreement concerned a settlement of the rights of the parties to the property left by decedent and did not contemplate transferring any interest in the property from the other owners to the widow, and that the word "remainder" referred only to the remainder of the half interest of her testator and not to the balance remaining of the proceeds of the share of the other owners. 6 Philippine Reports, 88, affirmed.

THE facts are stated in the opinion.

*Mr. Howard Thayer Kingsbury,* with whom *Mr. Frederic R.* *Coudert* was on the brief, for appellant:

The language of the agreement is plain and unambiguous and requires no judicial construction. It is on its face, an adjustment of various controversies between the parties, growing out of their relations to the de la Fuente estate.

To say that "the remainder" means "one-half of the remainder" is to make a new contract for the parties, in direct contravention of Article 1281 of the Spanish and Philippine Civil Code, and see Digest, Book XXXII, Tit. 1, L. 25; 17 Am. & Eng. Ency. of Law (2d ed.), 4.

According to both civil law and common law, as well as common sense, when the language of the parties to a contract clearly expresses a certain intention, it is not open to them to say that they meant something different, or to a court to make for them a new contract which it considers more equitable. Alcubilla; 3 Diccionario de la Administracion Española (5th ed.), 494.

The argument of the court below, that the word "remainder" must be limited to the inheritance which it was the intention and object of the parties to divide, is wholly fallacious, since the agreement is by no means limited in scope to a division of the estate of Gonzalez de la Fuente, but provides for an adjustment and recognition of the rights of all the parties entitled or claiming to be entitled to any interest in various properties in which said testator had an interest, and for the payment of claims, some of which, such as the mortgage to the Obras Pias, were apparently not sole and individual liabilities of the testator. Art. 1283 Civil Code, cited by the court below is thus wholly inapplicable.

The court below had no jurisdiction to review the evidence, and interpret the contract according to the facts thus found by it as to the parties' intentions. Philippine Code Civ. Proc., § 497.

The motion for a new trial in the case at bar was merely on the ground that the evidence was not sufficient to justify the

judgment and was thus evidently made under § 145 of the Philippine Code of Civil Procedure, and addressed to the discretion of the trial judge.

This clearly did not empower the appellate court to review the evidence and in effect make new findings of fact as to the intention of the parties, based on parol evidence. *De la Rama* v. *De la Rama*, 201 U. S. 303, 313–314.

Upon the record before it, the court below construed the agreement erroneously.

There was no appearance or brief for appellee.

MR. JUSTICE WHITE delivered the opinion of the court.

At the time of the death of Francisco Gonzalez de la Fuente he was the owner of an undivided half interest in a piece of real estate known as No. 69 on the Escolta, Manila, of an undivided half interest in a house known as No. 97 Calle Palacio, Province of Mamarines, Philippine Islands, and likewise of an undivided half interest in a certain hacienda. Besides this, there stood in the name of the deceased two houses in Ermita, Manila, which were, however, encumbered with a debt of twelve thousand dollars, payable in Mexican money, which debt was due to one Julian de La O, and the deceased moreover owned certain furniture and jewelry.

The remaining undivided half interest not owned by Fuente in the three first described pieces of property were jointly owned by his nephew, Gabriel Olives y Gonzalez de la Fuente, and two nieces, who were both married—Angeles Olives y Gonzalez de la Fuente, wife of Eduardo Gutierrez y Repide, and Paz Olives y Gonzalez de la Fuente, wife of Manuel Martinez.

By the will of Fuente all his property was given to his nephew Gabriel and his two nieces Angeles and Paz, subject, however, to a right of usufruct during her life in his wife Concepcion Calvo. It would seem that some controversy arose

between the widow as usufructuary and the nephews and nieces as heirs of Fuente and as coöwners in their own right as to the partition of the property. The result was a written agreement between the parties—the nephews and nieces and the wife—the whole of which is in the margin,[1] and the parts which we think are pertinent to this controversy we quote:

"The undersigned, Angeles and Paz Olives, in the presence of their respective husbands, and Gabriel Olives, as heirs of

---

[1] *Translation of Exhibit "A."*

The undersigned, Angeles and Paz Olives, in the presence of their respective husbands, and Gabriel Olives, as heirs of certain property, of Francisco Gonzalez de la Fuente, and Concepcion Calvo as usufructuary heiress of the said Gonzalez, agree upon a division of the inheritance, the principal conditions of which are as follows:

First: The property No. — on the Escolta, half of which belonged to the testator, shall be sold at the price not less than ninety thousand dollars.

Second. From the proceeds of the sale there shall be paid the amount owing to pious works, the amount owing Mr. Roensch, that owing Julian de La O, and the unpaid legacies made by José Gonzalez de la Fuente.

Third. The remainder shall be turned over to Concepcion Calvo, to be used by her as usufructuary heiress, after she has given a mortgage bond (fianza hipotecaria).

Fourth. Concepcion Calvo relinquishes her right to reimbursement of the amounts expended by her on account of the last illness and burial of the testator. But in compensation for this she shall have all the movable property of the testator with the exception of a set of buttons, *etc.*, belonging to testator's father, which shall go to Gabriel Olives as the only male grandson.

Fifth. With regard to the pieces of property purchased by the testator from Pantaleona Rivera, which were paid for by money, half of which belonged to the testator and the other half to the heirs of Paz Gonzales; Concepcion Calvo recognizes the said heirs as absolute owners of the half of the interest of the testator in and to the said property.

Sixth. Angeles, Paz and Gabriel Olives respect the legacy of the testator to Concepcion Calvo, and acknowledge her right to enjoy the usufruct of half of the house No. 97 Calle Palacio, and half of the estate of Pasacao, and half the interest of the Ermita houses.

Seventh. Gabriel, Angeles and Paz Olives renounce all rights that they may have as wards of the testator to require a rendering of accounts of any kind.

Eighth. Concepcion Calvo shall be entitled to claim from Pantaleona Rivera whatever taxes she may have paid for the Ermita houses after the death of the testator.

In witness whereof, we sign the present document in Manila; this fourth day of May, 1903.

certain property of Francisco Gonzalez de la Fuente, and Concepcion Calvo, as usufructuary heiress of the said Gonzalez agree upon a division of the inheritance, the principal conditions of which are as follows:

"First. The property No. — on the Escolta, half of which belonged to the testator, shall be sold at the price not less than ninety thousand dollars.

"Second. From the proceeds of the sale there shall be paid the amount owing to pious works, the amount owing Mr. Roensch, that owing Julian de La O, and the unpaid legacies made by José Gonzalez de la Fuente.

"Third. The remainder shall be turned over to Concepcion Calvo, to be used by her as usufructuary heiress, after she has given a mortgage bond (fianza hipotecaria)."

This suit in the form of a bill in equity was commenced by the plaintiff in error, the widow, against the defendants, the nephew and nieces asserting rights under the agreement and asking the appointment of a receiver to take charge of the fund arising from the sale of the property on the Escolta and money derived from other sources, as well as a balance coming from the Ermita property after paying the debt with which that property was encumbered. Without going into detail or considering irrelevant questions, it suffices to say that the principal right which the widow asserted was that she was entitled under the agreement to hold as usufructuary the whole proceeds of the property on the Escolta after making the payments specified in the agreement. That is, her principal claim was that her usufructuary right under the will, in virtue of the agreement, attached not only to the proceeds of the share of the property on the Escolta owned by her husband at his death, but also to the share of the proceeds representing the undivided interest owned by the nephew and nieces. The case was put at issue and much testimony was taken in the trial court which that court deemed to be admissible upon the theory that it tended to throw light upon the meaning of the written agreement. There was judgment in favor of the widow,

practically maintaining all her claims, including her asserted
right to a usufructuary interest in the whole sum of the Escolta
property, and that portion of the decree was in effect the real
subject of controversy in the Supreme Court of the Philippine
Islands, to which the case was appealed. That court, whilst
recognizing the rights of the widow in other particulars, re-
versed the judgment in so far as it decreed her to be entitled
to a usufructuary interest in the whole of the proceeds of the
Escolta property, and confined her usufructuary right to the
proceeds of half of the Escolta property which had belonged
to her husband.

Two substantial grounds of error are here assigned: First,
that the Supreme Court of the Philippine Islands erred in its
conclusion concerning the Escolta property, because in doing
so it disregarded the unambiguous letter of the agreement;
and, second, because it differed with the trial court as to the
result of the evidence and therefore departed from the find-
ings of fact made by the trial court, which it is asserted the
court had not the power to do, because there had been no mo-
tion for a new trial in the lower court, on the ground that the
findings of fact were plainly and manifestly against the weight
of evidence. Philippine Code Civ. Proc. § 497. We put this
latter consideration at once out of view as being totally de-
void of merit. This is said because we do not think there were
findings below concerning the evidence throwing light upon
the contract in the sense which the proposition assumes; and
even if there were, we find nothing in the record justifying
the conclusion that such findings were disregarded by the
Supreme Court or that its conclusion on the controverted
question was based upon them. True it is that after interpret-
ing the contract and stating the legal rules by which it deemed
that interpretation was sustained: the opinion of the Supreme
Court made reference to what it believed to be the persuasive
force of the testimony concerning the relations and dealings
of the parties leading up to the contract. When the opinion,
however, is considered as a whole, we think it is clear that the

references made to the testimony may be put out of view, since the action of the court was really based alone upon its construction of the contract and the law applicable to it, and we shall therefore confine ourselves exclusively to that subject.

It will be observed that the first paragraph of the contract provided for the sale of the house on the Escolta, "half of which belonged to the testator," and fixed the price at which the sale should be made. The second clause provided for the deduction from the proceeds of sale of certain admitted debts or liabilities. The third clause provided that the remainder should be turned over to Concepcion Calvo, to be used by her as usufructuary heiress, after the giving by her of a mortgage bond. The whole controversy hinges on the word "remainder." The plaintiff in error insists because of this word that the plain letter of the contract exacted that the wife should take as usufructuary not only the proceeds of the sale of the portion of the property which the husband owned, and upon which alone prior to the contract her usufructuary right attached, but also the proceeds of the half of the property which belonged to the other parties and which prior to the contract she had no right or interest in, as usufructuary.

The argument is thus stated: "To say that the remainder means one-half of the remainder is to make a new contract for the parties in direct contravention of article 1281 of the Spanish and Philippine Civil Code." The article referred to provides that where the terms of a contract are clear, and there can be no doubt about the intention of the contracting parties, the legal stipulations of the contract shall be enforced. We do not follow the reference in the argument to authorities under the Spanish and Roman law enforcing the legal proposition. It is elementary. The difficulty is in its application to the cause before us, since the real question under the contract is whether the word "remainder" as used does not, in view of the subject with which the contract is concerned, relate and relate only to the remainder of the proceeds as to which, under the

will of the deceased, the usufructuary interest of the widow attached. Considering this subject, and looking at the contract, we think there can be no doubt that the word "remainder" as used in the contract must in the very nature of things, in the absence of an express stipulation to the contrary, be held not to have transferred to the widow a usufructuary interest in property which her deceased husband did not own, and which the very terms of the contract show was owned by other parties. The reasoning of the court below, in our opinion, so adequately disposes of the contention that the word "remainder" should be considered as having transferred to the widow a usufructuary interest in property to which that interest did not attach, that we excerpt a portion thereof, as follows:

"The court below was of opinion that the language of the third section of the foregoing agreement leaves no room for interpretation or construction, and that the word 'remainder' as used therein refers necessarily to the balance remaining after deducting from the whole amount received from the Escolta property the amount of the debts and legacies mentioned in the second section. We are of opinion, however, that the court erred in its construction of this section of the agreement, and we think that the word 'remainder' must be limited to the inheritance which it was the intention and object of the parties to divide, for the preamble expressly states that the parties, as heirs of Francisco Gonzalez de la Fuente, agree upon a division of the inheritance, and it is admitted that one-half of the property on the Escolta was the property of the defendants, and formed no part whatever of said inheritance.

"Article 1283 of the Civil Code provides that 'however general may be the terms of a contract, there shall not be understood as included therein other subjects or things and cases different from those regarding which the interested parties proposed to contract;' and we are of opinion that although the word 'remainder,' as used in the third section of the said agreement, might, in the broadest acceptation of the term, refer to the total balance resulting from the sale of the Escolta

property, nevertheless, under the provisions of the foregoing article it should be limited to the subject-matter of the agreement, and thus limited, it must be taken to refer to the remainder of the share of the inheritance in which Doña Concepción Calvo had a usufructuary life interest."

There is a conflicting contention in the argument for the appellant-that if there be doubt as to the meaning of the word "remainder" that doubt should be resolved in favor of the right of the widow to a usufruct in the portion of the property not belonging to her husband and as to which, therefore, she was not his usufructuary heir. We do not stop to analyze the matters thus relied upon, as we think it suffices to say that after an examination of the whole contract we find nothing in it which would justify the construction of the word "remainder" which is asserted. In other words, we can discover nothing in any part of the agreement which would authorize, without express language to that effect, the transferring to one party to the contract of valuable property belonging to the other, especially when the contract itself was concerned only, as aptly pointed out by the lower court, with settling the rights of the parties to the property left by the deceased.

*Affirmed.*